**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ANAS PACHECO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:24-cv-02638-TLP-tmp |
| v. | ) | |
| | ) | |
| LUGARDA GUZMAN MARTINEZ, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING IN PART PETITIONER'S MOTION FOR ATTORNEYS' FEES**

Petitioner Daniel Anas Pacheco moves for $83,097.22 in attorneys' fees and costs against Respondent Lugarda Guzman Martinez. (ECF No. 69; *see* ECF No. 75.) For the reasons below, the Court **GRANTS IN PART** Petitioner's motion.

## BACKGROUND

This case involves a father, a mother, their two children, and the Hague Convention. In September 2024, Petitioner filed a Verified Petition under the International Child Abduction Remedies Act ("ICARA"). (ECF No. 1.) *See* 22 U.S.C. §§ 9001–11 (codifying Hague Convention). He alleged—through his pro bono counsel Rogers & Brackin PLLC ("Rogers & Brackin")—that Respondent illegally removed their children from Mexico to the United States. (ECF No. 1.) Early on, this Court entered a temporary custody arrangement that required the children to reside with each parent in alternating weeks. (ECF No. 35.) The Court then appointed counsel for Respondent. (ECF No. 38.) And after a three-day final hearing in January 2025, this Court granted the Verified Petition. (ECF No. 61.)

1

After succeeding at trial, Petitioner moved for $94,924.72 in attorneys' fees, suit expenses, and costs under 22 U.S.C. § 9007(b)(3).[1]  (ECF No. 69.)  He claimed $62,150.00 in attorneys' fees and $32,774.72 in expenses.  (*Id.* at PageID 502.)  Respondent opposed the request.  (ECF No. 72.)  So the Court held a status conference and ordered Petitioner to supplement the record with another local attorney's affidavit.  (ECF No. 74.)  *See* LR 54.1.  And Petitioner did so, while also lowering his proposed attorneys' fees to $50,322.50.  (ECF Nos. 75, 76.)  After factoring in the lowered amount, Petitioner now seeks $83,097.22 in total.  For the reasons below, the Court **GRANTS IN PART** Petitioner's motion.

## ANALYSIS

ICARA's fee-shifting provision controls here.  Because Petitioner prevailed, ICARA requires the Court to "order [] [R]espondent to pay necessary expenses incurred by or on behalf of [] [P]etitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child[ren]."  22 U.S.C. § 9007(b)(3) (emphasis added); *see Pliego v. Hayes*, 843 F.3d 226, 231 (6th Cir. 2016) ("As required under ICARA's fee-shifting provisions . . . the court held in a separate order that [the petitioner] was entitled to an award of $100,471.18 in attorneys' fees and costs.").  That is unless Respondent "establishes that such order would be clearly inappropriate."  22 U.S.C. § 9007(b)(3).

Below, the Court first addresses Petitioner's proposed attorneys' fees before turning to expenses.  And then the Court determines whether Respondent has shown that the award is "clearly inappropriate."

---

[1] Petitioner did not move for attorneys' fees with the fourteen-day window set forth in Local Rule 54.1.  But Respondent did not challenge the filing's timeliness.

## I.    Attorneys' Fees

Well-settled principles guide the Court's analysis.  At its core, attorneys' fees must be reasonable.  *See, e.g.*, *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 562 (1986).  That standard requires the Court to strike a balance.  The award must be "adequately compensatory to attract competent counsel" while avoiding a "windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).  To get to a reasonable award, federal courts use the "lodestar" method— multiplying the reasonable hourly rate by the reasonable number of hours expended on litigation. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citation omitted).  The party seeking fees bears the burden to "establish[] entitlement to an award and document[] the appropriate hours expended and hourly rates."  *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  And after calculating the lodestar, a court may adjust the award based on the *Johnson* factors.[2]  Although a court retains discretion throughout this process, it "must provide a clear and concise explanation of its reasons for the fee award."  *Adcock-Ladd*, 227 F.3d at 349 (citation omitted).

---

[2] These factors are:
> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Adcock-Ladd*, 227 F.3d at 349 n.8.  That said, the Supreme Court "has limited the application of the *Johnson* factors, noting that 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'"  *Geier*, 372 F.3d at 786 (quoting *Hensley*, 461 U.S. at 434).

Petitioner seeks $50,322.50 in attorneys' fees. (ECF No. 75.) He offers itemized billing statements in support, which reflect the work billed by the Rogers & Brackin attorneys and paralegal. (ECF No. 69 at PageID 500–01.) He also offers two supporting affidavits. One is by Ms. Brackin, his lead attorney in the case. (ECF No. 75.) Her affidavit explains that she has practiced law since 2001 and only practices in domestic relations. (*Id.* at PageID 538.) But nothing in the record explains how long the two other attorneys have practiced law. The other affidavit is by Lara Butler. (ECF 76.) Since 2003, Ms. Butler has practiced "in the area of domestic relations and the Hague Convention." (*Id.*) It is her professional opinion that Rogers & Brackin's fees and services were necessary and reasonable in this case. (*Id.*) That opinion is based on the firm dedicating substantial time to address the novel and difficult issues in this case, the firm's successful result, as well as the firm's experience, reputation, and ability. (*Id.*) Ms. Butler also states that the proposed hourly rates are consistent with the local market. (*Id.*)

Turn now to Petitioner's proposed hourly rates. To arrive at a reasonable hourly rate, a "district court is permitted to 'rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821–22 (6th Cir. 2013) (*quoting Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)). Courts use the prevailing market rate as a guideline, "defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 972 F.3d at 791. And courts will compensate parties for work accomplished by paralegals. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285–86 (1989).

The hourly rates that Petitioner proposes here are:

Attorney Brackin—$370.00
Attorney Brown—$300.00

4

>Attorney Zant—$250.00
>Paralegal Bourbonais—$150.00

(ECF No. 69 at PageID 500–501.)  Respondent argues that these hourly rates are excessive

because Rogers & Brackin took this case pro bono yet billed private-client rates.  But the Court

is unpersuaded by this argument.  Ms. Butler's declaration explains that these hourly rates are

consistent with the local market, and the Court finds no reason to disagree.  Indeed, Respondent

does not argue that the rates are excessive, she only argues that "pro bono attorneys either work

for free or for a discounted hourly rate."  (ECF No. 72 at PageID 535.)  But the firm taking the

case pro bono does not change the calculus.  *See Johnson v. City of Clarksville*, 256 F. App'x

782, 784 (6th Cir. 2007) (citing *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir.1974)).

At bottom, the proposed rates are reasonable.

Next the Court turns to Petitioner's proposed hours.  The party seeking an award must

offer detailed documentation explaining the hours it billed.  *Inwalle v. Reliance Med. Prods.,*

*Inc.*, 515 F.3d 531, 553 (6th Cir. 2008); *Fox v. Vice*, 563 U.S. 826, 838 (2011).  That said, "[a]

request for attorney's fees should not result in a second major litigation."  *Hensley*, 461 U.S. at

437.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve

auditing perfection."  *Fox*, 563 U.S. at 838.

Petitioner proposes an award here that accounts for 207.75 hours of work.  (ECF No. 67-

1.)  He breaks that number down.

>Attorney Brackin—85 hours
>Attorney Brown—57.25 hours
>Attorney Zant—37 hours
>Paralegal Bourbonais—28.5 hours

(ECF No. 69 at PageID 500–01.)  Respondent argues that these hours are excessive because Roger & Brackin's itemized billing statements show they bill in fifteen-minute increments rather than the standard six-minute increment.  (ECF No. 72 at PageID 534.)

That point is well taken—the firm never billed less than 0.25 hours for a task.  For example, on December 1, 2024, Ms. Brackin emailed Petitioner the "courthouse address and where to meet."  (ECF No. 69-1 at PageID 516.)  Yet she billed 0.25 hours for that email.  (*Id.*)  And on December 9, 2025, Ms. Brackin billed 0.25 hours for another email.  (*Id.* at PageID 517.)  There, she asked Petitioner for a "copy of his mother's visa application and her full name."  (*Id.*)  The Court finds that these time allotments are excessive.

But Petitioner reduced his initial fee request by $11,824.50, almost a nineteen percent reduction.  (ECF No. 75 at PageID 539.)  That decrease is substantial.  And the Court finds that the reduction cures any excessive billing.  This is especially true given the Court's own review of other billing entries.  These entries reflect necessary legal tasks—drafting the Verified Petition, gathering and organizing exhibits, communicating with necessary parties, and preparing for trial.  (*See* ECF No. 69-1.)

With that said, the Court will not grant an award for the time Rogers & Brackin spent after the final hearing.  In February 2025, about three weeks after the final hearing, Ms. Zant and Ms. Brackin billed Petitioner for several hours of work related to this motion.  (ECF No. 69-1 at PageID 526.)  To be exact, Ms. Zant billed 5.25 hours for $1,312.50 and Ms. Brackin billed 0.5 hours for $185.00.  (*Id.*)  This included Ms. Zant spending two-and-a-half hours "[a]dd[ing] up travel and legal expenses incurred in Mexico" and "[c]reat[ing] spreadsheet of expenses."  (*Id.*)  Those fees do not relate to the return of Petitioner's children.  *See* 22 U.S.C. §9007(b)(3).  And it

would be unreasonable to require Respondent to pay this portion of the bill.  The Court therefore
excludes those hours from Petitioner's attorneys' fee award.

After excluding the February hours, Petitioner's attorneys' fees total $48,825.00.  And
the Court finds that is reasonable: Rogers & Brackin successfully litigated Petitioner's case from
the start through a three-day final hearing.  The record shows that the schedule was compressed
to address the important questions presented and the effort took substantial time and energy.
And at any rate, Petitioner's lowered request cures the Court's concerns about excessive billing.

After determining the lodestar amount, a court may adjust the fee award while
considering the twelve *Johnson* factors.  The Court keeps in mind, however, that the lodestar
amount likely already accounts for most of these factors.  *Perdue v. Kenny A. ex rel. Winn*, 559
U.S. 542, 553 (2010) ("[T]he lodestar figure includes most, if not all, of the relevant factors
constituting a 'reasonable' attorney's fee.").  But the Court finds that no *Johnson* factor warrants
an upward or downward adjustment here.  With that in mind,  courts have awarded similar, and
sometimes higher, fees under ICARA.  *See Abrego v. Guerra*, No. 23-2515, 2024 WL 5454649
(W.D. Tenn. Aug. 2, 2024) (granting $48,187.33 in attorneys' fees and costs); *Schaeffer v.
Jackson-Schaeffer*, No. 1:17-cv-00147, 2018 WL 2075335 (E.D. Tenn. Apr. 16, 2018), *report
and recommendation adopted*, No. 1:17-CV-147, 2018 WL 2074178 (E.D. Tenn. May 3, 2018)
(recommending $73,242.30 in legal fees and litigation expenses); *Guevara v. Soto*, No. 3:15-cv-
548, 2017 WL 401214 (E.D. Tenn. Jan. 30, 2017) (granting $50,312.47 in attorneys' fees); *Olson
v. Olson*, No. 13-0138, 2014 WL 1278654, at *1, *3 (M.D. Tenn. Mar. 31, 2014) (reducing a
$62,167.50 attorneys' fee request to $39,673.50); *Kufner v. Kufner*, No. C.A. 07-46S, 2007 WL
1521248, at *3 (D.R.I. May 23, 2007) (awarding $248,811.00 in attorneys' fees).  The Court thus
awards Petitioner $48,825.00 in attorney fees.

## II.    Expenses

As mentioned, ICARA entitles Petitioner to the "necessary expenses" that he incurred during these proceedings.  22 U.S.C. § 9007(b)(3).  But the statute does not define "necessary expenses."  Even so, ICARA says that these expenses include "court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child."  *Id.*  And ICARA's fee-shifting purpose—which is to "restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter such conduct from happening in the first place"— provides more guidance.  *Wan v. Debolt*, No. 20-3233, 2021 WL 3510232, at *12 (C.D. Ill. Aug. 10, 2021) (quoting *Hague Convention*, 51 Fed. Reg. 10494-501, 10511).

Petitioner groups his itemized expenses into two categories here—travel and litigation— and seeks $32,774.72 in total.  (ECF No. 68-1; ECF No. 69 at PageID 501.)  The Court considers each category below.

### A.    Travel Expenses

Petitioner's proposed travel expenses total $17,051.72.  (ECF No. 68-1 at PageID 494–95.)  This includes airfare, transportation, and lodging.  (*Id.*)  Respondent argues that many of these expenses "were not necessary to enable Petitioner to obtain the return of the children." (ECF No. 72 at PageID 536.)  The Court notes that courts across the country have awarded similar travel expenses.  *See Rishmawy v. Vergara*, No. 4:21-CV-35, 2022 WL 22893118, at *11 (S.D. Ga. Mar. 8, 2022) (awarding airfare and hotel costs); *Neves v. Neves*, 637 F. Supp. 2d 322, 344 (W.D.N.C. 2009) (awarding expenses for airfare, cab fare, and lodging expenses); *Kufner v. Kufner*, No. C.A. 07-46S, 2007 WL 1521248, at *3 (D.R.I. May 23, 2007) (awarding $12,179.15 in travel and hotel costs); *Antunez–Fernandes v. Connors–Fernandes*, 259 F.Supp.2d 800, 816–

8

817 (N.D. Iowa 2003) (awarding travel and hotel expenses, translation costs, filing fee and service costs).

That said, the Court does not accept Petitioner's claim for travel expenses at face value. Even still, after review, the only expense outside ICARA's purview is a $3,402.00 request for airfare.  (ECF No. 68-1 at PageID 494.)  Petitioner explains that the flight "was to be with children, however, trial was continued and ticket was nonrefundable."  (ECF No. 68-1 at PageID 494.)  But Petitioner does not provide the date for this flight.  So the Court cannot find it is a "necessary expense."

After removing that flight, however, Petitioner's remaining $13,639.72 in travel expenses relate to the return of his children.  These include other flights—such as Petitioner's flight from Mexico to Memphis, the paternal grandmother's flight to testify, and a return flight to Mexico with the children—as well as costs for rental cars, gas, courthouse parking, and lodging.  (*Id.* at PageID 494–95.)  Although the costs appear high, Petitioner incurred them, at least in part, because this Court ordered the Petitioner and Respondent to alternate custodial weeks with their children.  (ECF No. 35.)  And because Respondent had moved to Gallatin, Tennessee, the Court ordered that the parenting time occur there.  (*Id.*)  So the Court finds that these expenses were directly related to "care during the course of the proceedings in the action, and transportation costs related to the return of the child."  22 U.S.C. § 9007(b)(3).  Thus, the Court awards Petitioner $13,639.72 in travel expenses.

### B.    Litigation Expenses

Petitioner's next requests litigation expenses totaling $15,723.00.  (ECF No. 68-1 at PageID 496–97.)  Respondent does not directly challenge these expenses.  And a prevailing petitioner is, of course, to entitled litigation expenses.  *See* 22 U.S.C. § 9007(b)(3).

But the Court declines to award Petitioner the $5,171.89 fee for "Brewer Detective . . . locating Mother and children and service of Mother in Gallatin, TN." (*Id.* at PageID 497.) Because Ms. Brackin's amended affidavit makes clear that she is responsible for that fee (ECF No. 75.), it follows that Petitioner cannot claim the fee as an expense. After removing that expense, Petitioner's remaining litigation expenses are $10,551.11. And Petitioner is not entitled to his proposed translator fees. The Temporary Custody Order states that "[t]he parties agree to equally divide the translator's fees and expenses." (ECF No. 35 at PageID 362.) And here, Petitioner seeks $5,730.19 in translation services billed throughout litigation. (ECF No. 68-1 at PageID 496–97.) Based on this Court's Order, that means Respondent is only responsible for her half of those costs. So the Court deducts $2,865.10 from the total. That reduction brings Petitioner's total amount down to $7,686.01.

The remaining expenses include copies, notary services, and various administrative costs related to the matter. These are the types of "necessary expenses" that Petitioner is entitled to under ICARA. *See* 22 U.S.C. § 9007(b)(3). The Court therefore awards Petitioner $7,686.01 in litigation expenses.

## III.     Whether the Award is Clearly Inappropriate

One final issue remains. ICARA provides the Court with the discretion to reduce or eliminate Respondent's obligation to pay fees and costs. 22 U.S.C. § 9007(b)(3). But Respondent must establish that the fee award "would be clearly inappropriate." *Id.* Yet ICARA does not define "clearly inappropriate."

And the Sixth Circuit has not addressed this language. But a common thread in cases decided by district courts and other circuits shows two common situations when awards are "clearly inappropriate." The first is when a fee award imposes such financial hardship that it

10

significantly impairs a respondent's ability to care for her children.  *See, e.g*, *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018); *Schwaneberg v. Lopez*, No. 24-0039, 2025 WL 2085531, at *7 (W.D. Va. July 24, 2025) (collecting cases).  And the second is when the respondent had a good-faith belief that removing the children was lawful or otherwise justified.  *See, e.g.*, *Rath*, 898 F.3d at 1311.

Respondent argues the former here.  She contends that Petitioner's award request is clearly inappropriate because she is unable to pay $94,924,72.  (ECF No. 72 at PageID 536.) And she "entered the United States illegally and was placed in removal proceedings."  (*Id.*) Because of that, Respondent reasons that "it would be clearly inappropriate to enter a judgment against her for the full amount requested because she would have to violate the law in order to work to pay for that judgment."  (*Id.*)

This Court is sympathetic to Respondent's quandary.  But that does not render this award clearly inappropriate.  Although Respondent may be unable to work in this country anymore, she does not argue that she will not find work in Mexico.  And after she opposed Petitioner's initial $94,924.72 request, Petitioner substantially lowered his proposed costs.  And then the Court cut it back even further.  The final sum, on balance, serves both to place Petitioner in the financial position he would have been but for Respondent's removal of their children and to "deter such conduct from happening in the first place."  *Wan*, 2021 WL 3510232, at *12.  Put simply, Respondent has not carried her burden to show that the award is "clearly inappropriate."  *See Gamboa v. Williams*, No. 24-3020, 2025 WL 1195567, at *4 (S.D. Tex. Apr. 24, 2025) ("While the Court is sympathetic to Respondent's financial difficulties, those assertions alone—without any evidence that would render the award clearly inappropriate—do not overcome the presumption that the award should be granted.").

## <u>CONCLUSION</u>

Petitioner is entitled to attorneys' fees, costs, and expenses.  Just not in the amount he

proposed.  As a result, the Court **GRANTS IN PART** Petitioner's motion and **ORDERS**

Respondent to pay Petitioner a total of $70,150.  This payment includes attorneys' fees in the

amount of $48,825.00, $13,639.72 in travel expenses and $7,686.01 in litigation expenses.

Subject to any offset under the Treasury Offset Program, Respondent shall make this award

payable to Petitioner's counsel and mail the payment to Petitioner's counsel.

**SO ORDERED**, this 26th day of September, 2025.

 s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE